**IN THE UNITED STATES DISTRICT COURT
FOR NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Civil Action No. |
| Plaintiff | **Complaint for Foreclosure and Possession** |
| KENNETH L. WILSON, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF KENNETH H. WILSON; DONALD C. WILSON, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES AND HIS, HER, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST; ANNA WILSON; BRIAN WILSON; CANDICE WILSON; DEVAL, LLC; STATE OF NEW JERSEY; FEDERATED FINANCIAL CORPORATION OF AMERICA; BGM FINANCIAL, LLC D/B/A EAST COAST BAIL BONDS; ROSENFARB & CO-PARTNERS, P.A. T/A ROSENFARB & CO., CERTIFIED PUBLIC ACCOUNTANTS; BENHUR RICKETTS; MAURICE WELLINGTON; CREDIT ACCEPTANCE CORPORATION, ASSIGNEE OF ADAS AUTO GROUP, INC.; HUDSON MRI, PA; NJDOT CREDIT UNION;  J.C. PENNEY COMPANY; CAREONE AT MERCER, LLC D/B/A CAREONE AT EWING; ADRIANA WILSON; MICHAEL ANTHONY AUTO SALES, INC.; M&R AUTO SALES; ANTHONY DEVINCENTIS, DMD | |
| Defendant(s) | |

The UNITED STATES OF AMERICA, by and through its attorneys, Frank J. Martone, P.C., states the following claims against the defendants:

**PARTIES**

1.      Plaintiff, Department of Housing and Urban Development, is an agency of the United States of America, (hereinafter referred to as "United States of America" having an office at 301 NW 6th Street, Suite 200, Oklahoma City, Oklahoma.

2.      Upon information and belief, KENNETH H. WILSON, original owner, died on June 10, 2013.  Plaintiff's inquiry revealed an Application for Probate was filed with the Atlantic County Surrogate's Court under Docket #114469.  The Last Will & Testament of Kenneth H. Wilson (aka Kenneth Howard Wilson) named Kenneth L. Wilson as Executor of the Estate of Kenneth H. Wilson.  Letters Testamentary were issued to Kenneth L. Wilson on June 21, 2013.  The Last Will & Testament of Kenneth H. Wilson devised the residuary estate to KENNETH L. WILSON, son and DONALD CLAYTON WILSON, son.

(a).      Upon information and belief KENNETH H. WILSON is also known as KENNETH HOWARD WILSON and is being designated herein in as KENNETH H. WILSON.  He is one and the same person.

(b).      Upon information and belief KENNETH L. WILSON is also known as KENNETH LAWRENCE WILSON and also known as KEN WILSON and is being designated herein in as KENNETH L. WILSON.  He is one and the same person.

(c).      Upon information and belief DONALD C. WILSON is also known as DONALD CLAYTON WILSON and also known as DONALD V. WILSON and also known as DON WILSON and is being designated herein in as DONALD C. WILSON.  He is one and the same person.

(d).      KENNETH L. WILSON is hereby made a party defendant in his capacity as Executor of the Estate of Kenneth H. Wilson and Individually as an heir/beneficiary at law and next of kin of the decedent Kenneth H. Wilson, and for any interest he may have in the subject property.  The subject premises is not his primary marital residence.

(e).      Upon information and belief, DONALD C. WILSON, heir/beneficiary at law and next of kin of the decedent, Kenneth H. Wilson is deceased.   Donald C. Wilson passed away on September 29, 2014, died Intestate in Arapahoe, North Carolina.  Plaintiff's further inquiry revealed a filed Probate was filed for the estate of Donald C. Wilson in the County of Pamlico, North Carolina, under File No. 15 E 537 filed on August 14, 2015 which revealed the following last known heirs and

next of kin: **Anna Wilson, spouse, Brian Wilson, son and Candice Wilson, daughter**. The subject premises is not the primary marital residence of Donald C. Wilson.

(f).     In the event that there are any heirs at law and next of kin of Donald C. Wilson, that plaintiff is unaware of plaintiff herein joins the unknown heirs of Donald C. Wilson, for any interest they may have in the subject property and are designated as:

DONALD C. WILSON, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES AND HIS, HER, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST

(g).     ANNA WILSON is hereby made a party defendant as an heir at law and next of kin of the decedent Donald C. Wilson, and for any interest she may have in the subject property.  The subject premises is not her primary marital residence.

(h).     BRIAN WILSON is hereby made a party defendant as an heir at law and next of kin of the decedent Donald C. Wilson, and for any interest he may have in the subject property. The subject premises is not his primary marital residence.

(i).     CANDICE WILSON is hereby made a party defendant as an heir at law and next of kin of the decedent Donald C. Wilson, and for any interest she may have in the subject property. The subject premises is not her primary marital residence.

3.     The State of New Jersey is hereby made a party defendant by virtue of its interest in any unpaid transfer, estate and/or inheritance taxes, which may be due by reason of the death of Kenneth H. Wilson.

4.     On September 3, 2013, The Estate of Kenneth H. Wilson**,** conveyed the premises being foreclosed herein to DEVAL, LLC**,** which deed was recorded September 3, 2013 in Book/VOL 13649 of Deeds for Atlantic County, Instrument #2013055132.

5.     Defendants set forth below are holders of docketed judgment(s) and their liens are subordinate to that of plaintiff, and they are joined because of the judgment that they hold.

(a).  **State of New Jersey is made a party defendant by virtue of the following judgment.**

```
                        SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-126527-2014              CASE NUMBER: C  000077  04
DATE ENTERED: 07/15/14      DATE SIGNED: 06/09/14
TYPE OF ACTION: ENVIRONMNT
VENUE: BURLINGTON
                                            DEBT: $    50,000.00
 CREDITOR(S):
     NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION
           ATTORNEY: ATTORNEY GENERAL OF NEW JERSEY
 DEBTOR(S):
     CENTENNIAL PINES CLUB
        (No Address)
      ATTORNEY: GREENBLATT & LAUBE PC
                        ---------------
                                            DEBT: $   700,000.00
 CREDITOR(S):
     NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION
           ATTORNEY: ATTORNEY GENERAL OF NEW JERSEY
 DEBTOR(S):
     JOSEPH SAMOST
        (No Address)
      ATTORNEY: HAGNER & ZOHLMAN
     STEPHEN D SAMOST ,ESQ.
        (No Address)
     CENTENNIAL LAND & DEVELOPMENT CORP
        (No Address)
      ATTORNEY: LEODORI & VOORHEES
     DEVEL LLC
        (No Address)
                        ---------------
                        *** End of Abstract ***
```

(b).   **Said Judgment was docketed as Federated Financial Corporationof Ameirca. Federated Financial Corporation of America is made a party defendant by virtue thereof.**

```
                        SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-163715-2009              CASE NUMBER: L  006423  08
DATE ENTERED: 07/14/09      DATE SIGNED: 01/26/09
TYPE OF ACTION: CONTRACT
VENUE: ESSEX
                                            DEBT: $    22,078.70
 CREDITOR(S):
     FEDERATED FINANCIAL CORPORATIONOF AMEIRCA
           ATTORNEY: FLEISCHER FLEISCHER & SUGLIA
                     PLAZA 1000 AT MAIN ST SUITE 208
                     VOORHEES NJ 08043
                     856-489-8977
 DEBTOR(S):
     KEN WILSON ,INDIVIDUALLY
        (No Address)
           D/B/A
     COUNTER POISE SYSTEM
        (No Address)
  PLUS COSTS
                        ---------------
                        *** End of Abstract ***
```

4

(c).

```
                              SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-206461-2016              CASE NUMBER: L   002192  15
DATE ENTERED: 11/04/16    DATE SIGNED: 10/11/16
TYPE OF ACTION: BOOK ACC
VENUE: BURLINGTON
                                               DEBT: $    46,486.50
                                               COSTS: $      300.00
 CREDITOR(S):
      BGM FINANCIAL LLC
           D/B/A
      EAST COAST BAIL BONDS
               ATTORNEY: HUDSON LAW OFFICES PC
                         900 RTE 168 STE C-2
                         TURNERSVILLE NJ 08012
                         856-228-7600
 DEBTOR(S):
      KENNETH WILSON
         (No Address)
             A/K/A
      KEN WILSON
         (No Address)
      CHERI L HENDERSON
         (No Address)
             A/K/A
      CHERI HENDERSON WILSON
         (No Address)
             A/K/A
      CHERI LOIUSE HENDERSON
         (No Address)
             A/K/A
      C L HENDERSON
         (No Address)
             A/K/A
      CHERI HENDERSON
         (No Address)
   PLUS A/F & INT
                         ---------------
               CHERI WILSON ADDED TO OUR INDEX.
                     *** End of Abstract ***
```

(d).

```
                              SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-284275-1998              CASE NUMBER: L   004536  97
DATE ENTERED: 10/30/98    DATE SIGNED: 10/27/98
TYPE OF ACTION: CONTRACT
VENUE: HUDSON
                                               DEBT: $    69,789.30
 CREDITOR(S):
      ROSENFARB & CO-PARTNERS, P.A.
           T/A
      ROSENFARB & CO., CERTIFIED PUBLIC ACCOUNTANTS
           ATTORNEY: DAVID KESSLER
 DEBTOR(S):
      MARKEESE WILSON
         (No Address)
      DONALD WILSON SR
         (No Address)
   PLUS COSTS, J&S
                         ---------------
                     *** End of Abstract ***
```

(e).

```
                          SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-017942-2012            CASE NUMBER: L   009522  08
DATE ENTERED: 01/19/12     DATE SIGNED: 12/13/11
TYPE OF ACTION: OTHER GE
VENUE: ESSEX
                                          DEBT: $    107,857.76
 CREDITOR(S):
      BENHUR RICKETTS
            AND
      MAURICE WELLINGTON
           ATTORNEY: CHARLES M DAMIAN
 DEBTOR(S):
      PYRAMID INDUSTRIES ENTERPRISES LLC
          (No Address)
      DONALD WILSON JR
          (No Address)
   PLUS COSTS J&S
                       ---------------
                       *** End of Abstract ***
```

(f).

```
                          SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-059575-2016            CASE NUMBER: L   003646  14
DATE ENTERED: 04/06/16     DATE SIGNED: 09/08/15
TYPE OF ACTION: OTHER
VENUE: PASSAIC
                                          DEBT: $     18,478.26
                                          COSTS: $       332.00
 CREDITOR(S):
      CREDIT ACCEPTANCE CORPORATION ,ASSIGNEE OF ADAS AUTO GROUP INC
           ATTORNEY: LYONS DOUGHTY & VELDHUIS
 DEBTOR(S):
      DONALD WILSON
          (No Address)
                       ---------------
                       *** End of Abstract ***
```

(g).

```
                          SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-260406-1998           CASE NUMBER: DC  630818  92
DATE DOCKETED: 10/08/98      DATE OF JUDGMENT IN S.C.P.: 06/02/93
TYPE OF ACTION: CONTRACT
VENUE: HUDSON
                                          DEBT: $      1,081.00
                                          COSTS: $        62.62
                                          OTH: $          7.00
                                          INT: $        622.44
                                          DCKG: $         5.00
 CREDITOR(S):
      HUDSON MRI PA
           ATTORNEY: DAVID WATNER
 DEBTOR(S):
      MICHELE WILSON
          (No Address)
      DONALD WILSON
          (No Address)
                       ---------------
                       *** End of Abstract ***
```

6

(h).

```
                      SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-292563-1998              CASE NUMBER: DC  004861  98
DATE DOCKETED: 11/10/98      DATE OF JUDGMENT IN S.C.P.: 09/17/98
TYPE OF ACTION: CONTRC-REG
VENUE: OCEAN
                                         DEBT: $      7,294.78
                                        COSTS: $        213.90
                                          INT: $         35.37
                                         DCKG: $          5.00
 CREDITOR(S):
      NJDOT CREDIT UNION
            ATTORNEY: PETER J. LISKA
 DEBTOR(S):
      DONALD V WILSON
      ANNA M WILSON
                  1 SEAMEADOW DR, TUCKERTON, NJ 08087
            ATTORNEY: PRO SE
                      ---------------
                  *** End of Abstract ***
```

(i).

```
                    UNITED STATES DISTRICT COURT
JUDGMENT NUMBER: CV-004205-2003
DATE ENTERED: 04/29/05
TYPE OF ACTION: CIVIL                       VENUE: TRENTON
 JUDGE: MARY L COOPER
 CREDITOR(S):
      J.C.PENNEY COMPANY
            ATTORNEY: JAY H GREENBLATT-
                      200 NORTH EIGHTH ST
                      PO BOX 883
                      VINELAND NJ 08360
                      856-691-0424
 DEBTOR(S):
      CLAIRE WILSON
          (No Address)
      DONALD WILSON
          (No Address)
        ATTORNEY: TIMOTHY LEE BARNES-
                  186 MAIN ST
                  CHATHAM NJ 07928
                  973-635-1141
   ARBITRATION AWARD        ---------------
                  *** End of Abstract ***
```

(j).

```
                         SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-036714-2016            CASE NUMBER: L   001999  15
DATE ENTERED: 02/29/16     DATE SIGNED: 01/13/16
TYPE OF ACTION: BOOK ACC
VENUE: MERCER
                                              DEBT: $     47,362.66
                                               INT: $     21,313.20
                                             COSTS: $        240.00
 CREDITOR(S):
     CAREONE AT MERCER LLC
           D/B/A
     CAREONE AT EWING
            ATTORNEY: SCHWRTZ SLADKUS REICH ET AL
                      270 MADISON AVE
                      NEW YORK NY 10016
                      212-743-7000
 DEBTOR(S):
     ANNIE WILSON
        (No Address)
                        ---------------
                        *** End of Abstract ***
```

(k).

```
                         SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: J-118675-2016            CASE NUMBER: FM 001167  11
DATE ENTERED: 07/12/16     DATE SIGNED: 06/13/16
TYPE OF ACTION: OTHER GE
VENUE: UNION
                                              DEBT: $     67,050.36
                                               A/F: $      1,787.44
 CREDITOR(S):
     ADRIANA WILSON
            ATTORNEY: BITTIGER ELIAS & TRIOLO PC
                      12 RTE 17 NORTH STE 320
                      PARAMUS NJ 07652
                      201-438-7770
 DEBTOR(S):
     BRIAN S WILSON
        (No Address)
   INCL COSTS
                        ---------------
 CREDITOR(S):
     ADRIANA WILSON
            ATTORNEY: BITTIGER ELIAS & TRIOLO PC
                      12 RTE 17 NORTH STE 320
                      PARAMUS NJ 07642
                      201-438-7770
 DEBTOR(S):
     BRIAN A WILSON ,PER ORDER FILED 02-21-17
        (No Address)
                        ---------------
  01-30-16 ORDER AMENDING DEFENDANT NAME FROM TO BRIAN S WILSON TO BRIAN
  A WILSON.  RECORDED 02-21-17
                        *** End of Abstract ***
```

(l).

**State of New Jersey is made a party defendant by virtue of the following judgment.**

```
                    SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-129209-2003
DATE DOCKETED: 05/28/03
TYPE OF ACTION: CERTIF OF DEBT
VENUE: MERCER
                                        DEBT: $       250.00
 CREDITOR(S):
     DIV OF MOTOR VEHICLES
           ATTORNEY: PRO SE
 DEBTOR(S):
     CANDACE D WILSON , DRIVERS LICENSE # ███████████████
                2513 CARNABY DR, BALTIMORE, MD 21244-1909
           ATTORNEY: PRO SE
                    ---------------
                *** End of Abstract ***
```

(m).

```
                    SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-199205-2005          CASE NUMBER: DC  000950  05
DATE DOCKETED: 08/03/05      DATE OF JUDGMENT IN S.C.P.: 05/18/05
TYPE OF ACTION: CONTRC-REG
VENUE: UNION
                                        DEBT: $     2,594.00
                                        COSTS: $      120.88
                                        DCKG: $        10.00
 CREDITOR(S):
     MICHAEL ANTHONY AUTO SALES INC
           ATTORNEY: DONNA L THOMPSON
                PO BOX 170
                ALLENWOOD NJ 08720
 DEBTOR(S):
     CANDACE WILSON
                725 E SIXTH ST, PLAINFIELD, NJ 07062
           ATTORNEY: PRO SE
                    ---------------
                *** End of Abstract ***
```

(n).

```
                        SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-201234-2006              CASE NUMBER: DC  001910  06
DATE DOCKETED: 08/09/06          DATE OF JUDGMENT IN S.C.P.: 05/25/06
TYPE OF ACTION: CONTRC-REG
VENUE: UNION
                                          DEBT: $      4,969.40
                                         COSTS: $        176.38
                                          DCKG: $         10.00
 CREDITOR(S):
     M&R AUTO SALES
           ATTORNEY: DONNA L THOMPSON
                     PO BOX 170
                     ALLENWOOD NJ 08720
                     732-681-4301
 DEBTOR(S):
     CANDACE WILSON
                APT 1A
                1348 W FRONT ST, PLAINFIELD, NJ 07063
           ATTORNEY: PRO SE
                     ---------------
                  *** End of Abstract ***
```

(o).

```
                        SUPERIOR COURT OF NEW JERSEY
JUDGMENT NUMBER: DJ-188601-2014              CASE NUMBER: DC  005957  14
DATE DOCKETED: 10/07/14          DATE OF JUDGMENT IN S.C.P.: 08/20/14
TYPE OF ACTION: CONTRC-REG
VENUE: PASSAIC
                                          DEBT: $        785.96
                                          DCKG: $         10.00
 CREDITOR(S):
     ANTHONY DEVINCENTIS D M D
                #208,
                 1129 BLOOMFIELD AV, WEST CALDWELL, NJ 07006
           ATTORNEY: DAVID B WATNER
                     1129 BLOOMFIELD AVE
                     SUITE 208
                     WEST CALDWELL NJ 07006
 DEBTOR(S):
     CANDACE WILSON
                147 BROOKDWOOD RD, CLIFTON, NJ 07012
           ATTORNEY: PRO SE
                     ---------------
                  *** End of Abstract ***
```

6.    **Plaintiff** is also the holder of the following docketed judgment(s) and are reported herein for informational purposes only.

(a).

```
                           UNITED STATES DISTRICT COURT           ____
JUDGMENT NUMBER: CR-000118-1998
DATE ENTERED: 02/17/99
TYPE OF ACTION: CRIMINAL
                                           DAMAGES: $      1,000.00
                                          FILE DATE: 02/17/99
 CREDITOR: UNITED STATES OF AMERICA
 DEBTOR(S):
      KENNETH WILSON
         (No Address)
                           ---------------
                       *** End of Abstract ***
```

(b).

```
                           UNITED STATES DISTRICT COURT
JUDGMENT NUMBER: CR-000781-2009
DATE ENTERED: 12/16/10
TYPE OF ACTION: CRIMINAL                    VENUE: CAMDEN
 JUDGE: JOSEPH H RODRIGUEZ
                                        FINE: $      2,500.00
                              SPEC ASSESSMENT: $       100.00
                                          FILE DATE: 12/14/10
 CREDITOR: UNITED STATES OF AMERICA
 DEBTOR(S):
      VALERI PYCHNENKO
         (No Address)
            A/K/A
      ALEX WALTER
         (No Address)
       ATTORNEY: MICHAEL J DIAMONDSTEIN-
                 15TH AND JFK BLVD
                 PHILADELPHIA PA 19102
                 215-940-2700
         FORFEITURE OF PROPERTY $219,000.00---------------
                              SPEC ASSESSMENT: $       100.00
                                          FILE DATE: 04/07/11
 CREDITOR: UNITED STATES OF AMERICA
 DEBTOR(S):
      KEN WILSON
         (No Address)
       ATTORNEY: JACK MCMAHON-
                 1500 WALNUT ST
                 SUITE 1100
                 PHILADELPHIA PA 19102
                 215-985-4443
                           ---------------
 USA REPRESENTED BY:
 JASON M RICHARDSON
 OFFICE OF THE US ATTORNEY
 401 MARKET ST
 PO BOX 1427
 CAMDEN, NJ 08101
 856-757-5026
         VALERY PYCHNENKO ADDED TO OUR INDEX.
                       *** End of Abstract ***
```

(c).

```
                        UNITED STATES DISTRICT COURT
JUDGMENT NUMBER: MG-008060-2009
DATE ENTERED: 10/25/10
TYPE OF ACTION: CIVIL                          VENUE: NEWARK
 JUDGE: MADELINE C ARLEO

                                          FINE: $         250.00
                              SPEC ASSESSMENT: $          25.00
                                     FILE DATE: 10/21/10

  CREDITOR: UNITED STATES OF AMERICA
  DEBTOR(S):
       DONALD WILSON
          (No Address)
        ATTORNEY: CHESTER KELLER-
                 972 BROAD ST
                 NEWARK NJ 07102
                 973-645-6347
                      ---------------

  USA REPRESENTED BY:
  RANDALL HASTINGS COOK
  OFFICE OF THE US ATTORNEY
  DISTRICT OF NEW JERSEY
  970 BROAD ST
  NEWARK, NJ 07102
  973-645-2700
                      *** End of Abstract ***
```

## JURISDICTION AND VENUE

7.      Jurisdiction is based on 28 U.S.C. §1345, which provides that the district courts

shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United

States, or by any agency or officer, and upon 12 U.S.C. 1715 *et seq.*

8.      Venue is proper in this district under 28 U.S.C. §1391 and §1396 as the transaction

which is the subject matter of this Complaint took place entirely in this district, and the real estate

which is the subject of this transaction is located in this district.

## FACTS

9.      The mortgagor, KENNETH H. WILSON, prior to the execution of the note and

mortgage, was duly advised and counseled regarding the United States Home Equity Conversion

Mortgage (HECM) loan program, which program is regulated and set forth in 24 CFR Part 206, *et*

*seq.* and all subsequent handbooks (4330.1 REV-5), mortgage letters, etc. as set forth by the

Secretary of the Department of Housing and Urban Development.  The purpose of this program

12

is set forth in 24 CFR 206.1, and as. "set out in section 255(a) of the National Housing Act, Public Law 73-479, 48 STAT. 1246 (12 U.S.C. 1715z-20)"; being further regulated by Handbook 4330.01 Rev. 5 and all subsequent mortgage letters as issued and set forth by the Secretary of the Department of Housing and Urban Development.

10. On or about August 29, 2005, KENNETH H. WILSON, executed and delivered to WELLS FARGO BANK, N.A., a Home Equity Conversion Adjustable Rate Note, attached hereto as **Exhibit A**, incorporated herein and made a part hereof as if fully written herein.  (Note). Under paragraph 2, of the Note, titled: **Borrower(s) Promise to Pay: Interest**, the mortgagor, Kenneth H. Wilson, agreed to the following, to wit:

> In return for amounts to be advanced by Lender to a maximum principal amount of $349,125.00, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated August 29, 2005 (Loan Agreement), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of Five and 390/1000 percent (5.3900%) per year until the full amount of principal has been paid.  The interest rate may change in accordance with Paragraph 5 of this Note.  Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

11. Simultaneously with the execution and delivery of the Note, and in order to secure the payment of said Note, the mortgagor, KENNETH H. WILSON executed and delivered to WELLS FARGO BANK, N.A., a Home Equity Conversion Mortgage, a copy of which is attached hereto as **Exhibit B**, incorporated herein and made a part hereof as if fully written herein (Mortgage).  Said Mortgage was duly recorded on October 5, 2005 in Book/VOL 12155, INSTRUMENT #2005106052, ATLANTIC County Clerk's/Register's Office, New Jersey.  Said real estate is within the jurisdictional limits of the Court.  Said mortgage was not a purchase money mortgage.

12.     The mortgaged premises are described as follows:

All that certain tract or parcel of land and premises situate in the City of PORT REPUBLIC, County of ATLANTIC and State of New Jersey being more particularly described as follows:

See attached **Exhibit C**.

Tax Lot 32, Block 14, commonly known as 215 Old New York Road, Port Republic, New Jersey 08241.

The legal description contained in Exhibit C attached hereto was obtained from Deed dated January 23, 1942, recorded February 3, 1942, in Book 1129, Page 182 which conveys the southerly 209 x 52 portion of the land and Deed dated July 29, 1953, recorded July 29, 1953, in Book 1870, Page 498 which conveys the northerly 209 x 52 portion of the land.  The mortgage describes the property as being situate in the City of Port Republic, County of Atlantic, State of New Jersey, being Lot 32, Block 14.

13.     On April 12, 2013 by assignment bearing that date, WELLS FARGO BANK, N.A. assigned said Note and Mortgage to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT which Assignment was recorded in the Clerk's/Register's office of ATLANTIC County, New Jersey on May 7, 2013 in Book/VOL 13588 of Assignments of Mortgage for said County, INSTRUMENT #2013028016.  See **Exhibit D**.

14.     The mortgagor KENNETH H. WILSON, was deemed deceased on June 10, 2013.

15.     The Mortgage provide, at paragraph 9, titled **Grounds for Acceleration of Debt**, "(a) Due and Payable.  Lender may require immediate payment in full of all sums secured by this Security Instrument if: (i) a Borrower dies and the Property is not the principal residence of at least one surviving Borrower".  KENNETH H. WILSON was the only borrower on the Note and Mortgage.

16.     Demand for payment of all sums due under the Note and Mortgage was made, and payment has not been paid.

17.     The Defendant(s), Kenneth H. Wilson is indebted to the United States of America on behalf of the Secretary of Housing and Urban Development and there remains due the

following sums to the Plaintiff.  (See Statement of Account, attached hereto as **Exhibit E**, incorporated herein and made a part hereof as if fully written herein.)

| | | |
|---|---|---|
| (a) | Unpaid Principal | $225,604.07 |
| (b) | Interest accrued in accordance with<br>Adjustable rate note/mortgage:<br>at the annual rate of 3.250%<br>per annum | $ 60,167.97 |
| (c) | MIP<br>Advances for tax payments and insurance<br>Set forth in 24 CFR 206.27 & 206.103 *et seq.*<br>and HUD Handbook 4330.1 (13-14) | $ 17,063.59 |
| (d) | Service Fee<br>set forth in HUD Handbook 4330.1 (13-15) | $ 4,530.00 |
| | Total (as of March 30, 2018) | $307,365.63 |

18.     Said Note and Mortgage contained an agreement that if any of the installments of taxes, assessments, water rents, charges, impositions or liens, levied upon the premises should remain in default, the mortgagee may pay the same, and such amount paid shall be a lien on said lands, added to the amount of the mortgage debt and secured by this mortgage.

19.     During the course of this action, the plaintiff may be obligated to make advances for the payment of taxes, insurance premiums, and necessary expenses and curative payments to preserve the security, and such sums advanced under the terms of the Note, together with interest, are to be added to the amount due on the mortgage debt and secured by the plaintiff's mortgage.

20.     On June 10, 2013, default occurred. The entire principal and interest, insurance and taxes and other charges became due and payable on plaintiff's mortgage and has not been paid.  Plaintiff has elected that the whole of the unpaid principal and interest shall now be due.

21.     The following instruments or liens of record in the Office of the Clerk/Register of ATLANTIC County, New Jersey which affect or may affect the premises described herein all of which instruments or liens are subordinate to the lien of the mortgage set forth above.

21(a).  Home Equity Conversion Second Mortgage from KENNETH H. WILSON to SECRETARY OF HOUSING AND URBAN DEVELOPMENT, dated August 29, 2005, recorded October 5, 2005, in Mortgage Book/VOL 12155, INSTRUMENT #2005106053 in the maximum principal amount of $349,125.00.  Plaintiff is also the holder of the Home Equity Conversion Second Mortgage, however, plaintiff wishes to report the lien only and does not wish to foreclose this mortgage at this time, attached hereto as **Exhibit F.**

22.     Any interest or lien which any of the defendants herein has or claims to have in or upon the said mortgaged premises or some part thereof is subject to the lien of plaintiff's mortgage.

## COUNT ONE

### Foreclosure on the Mortgaged Premises

23.     Plaintiff repeats the allegations contained in Paragraphs 1 through 22 of the Complaint and makes same as part hereof as if repeated at length.

24.     As a result of KENNETH H. WILSON's default under the mortgage, Plaintiff is entitled to immediate payment of the entire unpaid balance due and owing under the loan documents, with interest accruing on such at the rate provided for under the mortgage, together with reasonable attorneys' fees and other charges as provided for under the mortgage.

WHEREFORE, plaintiff prays for judgment as follows:

(a)     Fixing the amount due on its mortgage.

(b)     Barring and foreclosing the defendants and each of them of all equity of redemption in and to said lands.

(c)     Directing that the plaintiff be paid the amount due on its mortgage with interest and costs.

(d)     Adjudging that said lands be sold according to law to satisfy the amount due plaintiff.

(e)     Appointing a receiver of rents, issues and profits of said lands.

(f)     Such other and further relief as the Court deems just and equitable.

## SECOND COUNT

### Possession of Mortgaged Premises

25.     Plaintiff repeats any and all allegations of Paragraphs 1 through 24 of the Complaint and makes same a part hereof as if repeated at length.

26.     By reason of the default in the terms of the mortgage referred to in the First Count of the Complaint, and by reason of the terms of the mortgage, plaintiff is entitled to possession of the premises described herein.

27.     Defendant(s), KENNETH L. WILSON, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF KENNETH H. WILSON; DONALD C. WILSON, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES AND HIS, HER, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE AND INTEREST; ANNA WILSON; BRIAN WILSON; CANDICE WILSON, and/or its tenants or assigns, are now in possession of the premises described herein and have at all times deprived plaintiff of possession of said premises.

WHEREFORE, plaintiff prays for judgment as follows:

(a)     That plaintiff or the purchaser at the foreclosure sale recovers possession of the mortgaged premises against said defendants or anyone holding under them.

(b)     Damages for mesne profits.

(c)     Costs.

(d)     Such other and further relief as the Court deems just and equitable.

## DESIGNATION OF TRIAL COUNSEL

Frank J. Martone, Esq. and Dennis P. Uhlmann, Jr., Esq. are hereby designated as trial counsels for the Plaintiff, UNITED STATES OF AMERICA.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned attorney certifies that there are no other actions pending or contemplated at this time related to the subject matter of this action.

## CERTIFICATION PURSUANT TO NEW JERSEY COURT R. 4:5-1 AND R. 4:64-1

In accordance with Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any action pending arbitration proceeding.  There is no other action or arbitration proceeding contemplated, nor is there any other party who should be joined in this action.

In accordance with Rule 4:64-1(a), I hereby further certify that a title search of the public record has been received and reviewed for the purpose of identifying any lien holders and/or other person and entities with an interest in the property that is subject to foreclosure.  The effective date of the title search is May 18, 2018.

## CERTIFICATION OF DILIGENT INQUIRY TO BE ANNEXED TO RESIDENTIAL MORTGAGE FORECLOSURE COMPLAINTS PURSUANT TO NEW JERSEY COURT RULE 1:5-6(c)(1)(E) AND RULES 4:64-1(a)(2) and (3)

Dennis P. Uhlmann, Jr., Esq., of full age, hereby certifies and says:

1.      I communicated by e-mail with the following named employee(s) of THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, who stated that he/she personally reviewed the documents submitted to the Court and that he/she confirmed their accuracy.

2.      The name, title and responsibilities of the plaintiff's employee(s) with whom I communicated are: GAYLENE FOX, PARALEGAL SPECIALIST, OFFICE OF COUNSEL, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; OVERSEE FORECLOSURE FILES.

3.      Based on my communication with the above-named employee(s) of plaintiff, as well as my own inspection of the loan information supplied by plaintiff and other diligent inquiry, I execute this certification to comply with the requirements of Rule 1:4-8(a), 1:5-6(c)(1)(E), and 4:64-1(a)(2) and (3).

4.      I am aware that I have continuing obligation under Rule 1:4-8 to amend this certification if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support for any factual assertions proffered by plaintiff in any court filings or documents in this case.

Respectfully submitted this ___5th___ day of ___November___, 20_18_

By:  _____
Dennis P. Uhlmann, Jr., Esq.
Attorney for Plaintiff
Frank J. Martone, P.C.
1455 Broad Street
Bloomfield, NJ 07003
973-473-3000
973-473-3243 – Fax
firm@martonelaw.com

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
Kenneth L. Wilson, Individually and as Executrix of the Estate of Kenneth H. Wilson, et als

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Atlantic__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FRANK J. MARTON, P.C. - 973-473-3000
Dennis P. Uhlmann, Jr., Esq.
1455 Broad Street, Bloomfield, NJ 07003

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 3   Federal Question *(U.S. Government Not a Party)*

☐ 2   U.S. Government Defendant

☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                             *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | **LABOR** | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. SEC. 1345 UNITED STATES OF AMERICA AS PLAINTIFF
Brief description of cause:
TO FORECLOSE A REVERSE MORTGAGE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/5/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# EXHIBIT "A"

## ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

FHA Case No.

AUGUST 29          , 2005

215 OLD NEW YORK ROAD, PORT REPUBLIC CITY, NEW JERSEY 08241

[Property Address]

### 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means WELLS FARGO BANK, N. A.

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender up to a maximum principal amount of $    349,125.00          , to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated    AUGUST 29, 2005          ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. Interest will be charged on unpaid principal at the rate of FIVE AND 390/1000 percent (    5.3900 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

(B) Place

Payment shall be made at
WELLS FARGO BANK, N. A.,
P. O. BOX 26901,
GREENSBORO, NORTH CAROLINA 27419-6901
1-800-472-3209                                      , or any such other place as Lender may designate in writing by notice to Borrower.

(C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

### 5. INTEREST RATE CHANGES

(A) Change Date

The interest rate may change on the first day of    NOVEMBER, 2005          , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

(B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

(C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of    ONE AND 500/1000 percentage points (    1.50000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above    FIFTEEN AND 390/1000          percent (    15.39000 %).

(E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

4HXA : 06/04

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

(i)  Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii)  Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

**13. GOVERNING LAW**

All interest, fees and other amounts charged or accruing in connection with this Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001 (a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates certain revolving credit accounts) does not apply to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____   (Seal)
KENNETH H WILSON                                                           -Borrower

_____   (Seal)
                                                                                        -Borrower

_____   (Seal)
                                                                                        -Borrower

_____   (Seal)
                                                                                        -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY
Joan M. Mills, Vice President

# EXHIBIT "B"

RECORD AND RETURN TO:
WELLS FARGO BANK, N. A.
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

```
ATLANTIC COUNTY, NJ
MICHAEL J GARVIN, COUNTY CLERK
RCPT # 64496 RECD BY chris
VOL 12155
REC FEES 110.00
RECORDED 10/05/2005 12:09:24 PM
INST # 2005106052
```

[Space Above This Line For Recording Data]

**State of New Jersey**                    FHA Case No.

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **AUGUST 29, 2005**                    . The mortgagor is
**KENNETH H WILSON**

whose address is   **215 OLD NEW YORK ROAD,**
**PORT REPUBLIC CITY, NEW JERSEY 08241**                    ("Borrower").
This Security Instrument is given to
**WELLS FARGO BANK, N. A.**
                                                              , which is
organized and existing under the laws of   **THE UNITED STATES OF AMERICA**
and whose principal office and mailing address is
**P.O. BOX 10304, DES MOINES, IOWA 50306-0304**

                                        ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED FORTY NINE THOUSAND ONE HUNDRED TWENTY FIVE AND 00/100 - - - - - - - - - - - - -**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $   **349,125.00**           ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This
Security Instrument and the Note secured hereby are subject to modification (including changes in the interest
rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353 § et seq., and
upon such modification, shall have the benefit of the lien priority provisions of that law.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in   **ATLANTIC**                    County, New Jersey:

96XC: 01/96                                        Page 1

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF PORT RUPUBLIC, COUNTY OF ATLANTIC STATE OF NEW JERSEY BEING LOT (S) 32, BLOCK 14, TAX MAP OF THE CITY OF PORT REPUBLIC, COUNTY OF ATLANTIC. LOT AND BLOCK SHOWN FOR INFORMATIONAL PURPOSES ONLY.

which has the address of  215 OLD NEW YORK ROAD
[Street]

PORT REPUBLIC CITY          , NEW JERSEY          08241          ("Property Address");
[City]                        [State]              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods  required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail.  Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly.  Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be

00XA : 02/02                          Page 2

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 02/02                                      Page 3

---

Branch CBQb Use 8 NOV915721-RBK-AMAD: 3D/o66me ntile 8ffi5ed C/mm06r18   Page 5 of 10 PageID :30MM

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS**                      from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to    **SIXTY DAYS**              from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

04XA : 02/02                                         Page 4

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 02/02                                Page 5

---

(d)  No Duty of the Secretary.  The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14.  Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15.  Successors and Assigns Bound; Joint and Several Liability.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.  Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary.  Borrower's covenants and agreements shall be joint and several.

16.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address all Borrowers jointly designate.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17.  Governing Law; Severability.  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

18.  Borrower's Copy.  Borrower shall be given one conformed copy of the Note and this Security NON-UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

19.  Assignment of Rents.  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach.  Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20.  Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

97XC: 01/97                                                              Page 6

---

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of        5.3900  % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of       NOVEMBER, 2005     , and on     ☐  that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FIFTEEN AND 390/1000**                percent (      15.39000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

98XC : 05/97                                   Page 7

---

Case 1:18-cv-15721-RBK-AMD   Document 1-3   Filed 11/06/18   Page 9 of 10 PageID: 34

## *FIRST AMERICAN TITLE INSURANCE COMPANY*

### Schedule A

**File Number:** ▇▇▇▇▇▇

#### LEGAL DESCRIPTION

**All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Port Republic, County of Atlantic State of New Jersey:**

**NOTE: Being Lot(s) 32, Block 14, Tax Map of the City of Port Republic, County of Atlantic.**

**NOTE : Lot and Block shown for informational purposes only.**

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
KENNETH H WILSON          -Borrower                                                    -Borrower

─────────── [Space Below This Line For Acknowledgment] ───────────

State of New Jersey

County of  **Atlantic**

I CERTIFY that on  **August 29, 2005**

**Kenneth H. Wilson**

personally appeared before me and acknowledged under oath, to my satisfaction, that this person (or if more than one each persons):

a.    is named in and personally signed the within instrument; and

b.    signed, sealed and delivered the same as his/her/their act and deed.

Signature _____

Title _____

99XC : 01/05

**KATHLEEN A. YOUNG
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 29, 2008**

# EXHIBIT "C"

## LEGAL DESCRIPTION

ALL that certain tract or parcel of land and premises, hereinafter particularly described, situate, lying and being in the City of Port Republic County of Atlantic and State of New Jersey

BEGINNING on the Westerly side of the New York Road one hundred and fifty-four feet from William A. Johnson Southeast corner to a stone for a corner; thence (1) Westwardly, two hundred and nine feet to a stone corner; thence (2) Southwardly, fifty-two feet to a stone for a corner; thence (3) Eastwardly, two hundred nine feet to a stone corner of said road; thence (4) Northwardly along said road fifty-two feet to the place of beginning.


ALL that lot of land situate in the City of Port Republic, County of Atlantic and State of New Jersey, bounded and described as follows; beginning at a point in the westerly line of the Old Neck Road also known as the Old New York Road, said point being 102 feet southerly from the southerly line of land formerly owned by William A. Johnson, thence, (1), North 82°-15'West, parallel with the aforesaid William A. Johnson line 209 feet; thence, (2), South 6° East parallel with the Old Neck Road 52 feet; thence (3), South 82°-15'East 209 feet to the westerly line of the Old Neck Road; thence, (4), along same North 6°West 52 feet to the place of beginning.

# EXHIBIT "D"

ATLANTIC COUNTY, NJ
EDWARD P. McGETTIGAN, COUNTY CLERK
RCPT # 1026120 RECD BY Yvette
VOL 13588
REC FEES $30.00
MARGINAL NOTATION $10.00
RECORDED 05/07/2013 01:33:36 PM
INST # 2013028016

After Recording, please return to:

**Stewart Lender Services**
Attn: Maude Le Blanc        Job Number:
9700 Bissonnet St., Suite 1500   Loan Number:
Houston, TX 77036           FHA Loan No:
Phone:

## ASSIGNMENT of MORTGAGE AND OTHER LOAN DOCUMENTS

WELLS FARGO BANK, N.A., whose address is ONE HOME CAMPUS, DES MOINES, IA 50328 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7TH STREET, S.W., WASHINGTON, D.C. 20410 ("Assignee"), and his/her successors and assigns, without recourse, the following:

1.     that certain Mortgage dated 8/29/2005, and recorded on 10/5/2005, Instrument/Document No. 2005106052, Book 12155, Page No. 0 , among the land records of Atlantic County, New Jersey, as amended or modified (the Mortgage), which Mortgage secures that certain promissory note dated 8/29/2005 (the "Note"); and

**Borrower:**   KENNETH H WILSON
**Recording Ref:**  Recorded on 10/5/2005, Instrument/Document No. 2005106052, Book 12155, Page No. 0, Date of Mortgage 8/29/2005

**Township:**   PORT REPUBLIC
**Original Beneficiary:**  WELLS FARGO BANK, N. A.

2.     such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.
IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the 12 day of April , 20 13 .

                                            WELLS FARGO BANK, N.A.
Attest:                                     By:

ZINAJDA IKELJIC                             KATHY McCAULEY, VP
Vice President Loan Documentation           Vice President Loan Documentation

## ACKNOWLEDGMENT

STATE OF IOWA
COUNTY OF DALLAS
The foregoing instrument was acknowledged before me on the 12 day of April , 20 13 by Kathy McCauley , as VICE PRESIDENT of Loan Documentation for WELLS FARGO BANK, N.A., in the capacity noted in the foregoing instrument.

                                            Notary Public
LAURA ALLEN                                 My commision expires 1/4/14
Commission Number 766116
My Commission Expires
January 4, 2014

# EXHIBIT "E"

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
|---|

| To  HUD/OFFICE OF GENERAL COUNSEL | 1. FHA Case Number ▄▄▄▄▄ | 2. Account Number ▄▄▄▄▄ |
|---|---|---|
| | 3. Mortgagor/Owner  KENNETH H WILSON | 4. Social Security Number ▄▄▄▄▄ |
| | 5. Co-Mortgagor | 6. Social Security Number |

| 7. Name of original mortgagor if different from above | 8. Property Address  215 OLD NEW YORK RD.  PORT REPUBLIC CITY, NJ 08241 |
|---|---|

## Part 1.  General Account Information

| Original Mortgage Amount | Unpaid Principal Balance  $225,604.07 | Escrow Balance | Interest Rate  3,250 | Term |
|---|---|---|---|---|
| Type of mortgage  HECM | Last payment applied | Date | Date of oldest unpaid interest installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Please Note:  The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2.  Assumption Information / Bring Current Information

Other mortgage is to be assumed:  1.  Remit certified funds to bring account current; 2.  Provide a copy of the conveyance document; 3.  Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4.  Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
|---|---|
| Principal | $225,604.07 |
| Interest | $60,167.97 |
| Tax Escrow Required | |
| Service Charge | $4,530.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $17,063.59 |
| Interest on Advances | |
| Total to Bring Current  as of:   03/30/2018 | $307,365.63 |
| Current Monthly Payment  Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment  See back of page if mortgage is 236 | |

## Part 3.  Payoff Information

| Principal Balance | $225,604.07 |
|---|---|
| Interest Due | $60,167.97 |
| Service Charge | $4,530.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $17,063.59 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount  as of:   03/30/2018 | $307,365.63 |
| Per Diem Service Charge | |
| Per Diem Interest | $31.58 |

| Prepared by  ALYSSA WARSTLER | Title  CASH ANALYST | Date  03/30/2018 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

Warning: HUD will prosecute false claims and statements.  Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012;  31 U.S.C. 3729, 3802)

| Certified by  KAYE JAMES | Title  CASH MANAGEMENT | Date  03/30/2018 |
|---|---|---|

form HUD-698 (1/89)

# EXHIBIT "F"



RECORD AND RETURN TO:
WELLS FARGO BANK, N. A.
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

```
ATLANTIC COUNTY, NJ
MICHAEL J GARVIN, COUNTY CLERK
RCPT # 64496 RECD BY chris
VOL 12155
REC FEES 110.00
RECORDED 10/05/2005 12:09:24 PM
INST # 2005106053
```

[Space Above This Line For Recording Data]

**State of New Jersey**                     FHA Case No. ▓▓▓▓▓▓

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
**AUGUST 29, 2005**          . The mortgagor is
**KENNETH H WILSON**

whose address is   **215 OLD NEW YORK ROAD,**
**PORT REPUBLIC CITY, NEW JERSEY 08241**                     ("Borrower"). This Security Instrument
is given to the Secretary of Housing and Urban Development, whose principal office and mailing address is 451
Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This
Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest,
at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum
principal amount of
**THREE HUNDRED FORTY NINE THOUSAND ONE HUNDRED TWENTY FIVE AND 00/100**--------------

(U.S. $   **349,125.00**          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
This Security Instrument and the Note secured hereby are subject to modification (including changes in the
interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353 § 1 et
seq., and upon such modification, shall have the benefit of the lien priority provisions of that law.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in   **ATLANTIC**                     County, New Jersey:

XD00 : 02/02                     Page 1

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE CITY OF
PORT REPUBLIC, COUNTY OF ATLANTIC STATE OF NEW JERSEY BEING LOT (S)
32, BLOCK 14, TAX MAP OF THE CITY OF PORT REPUBLIC, COUNTY OF
ATLANTIC. LOT AND BLOCK SHOWN FOR INFORMATIONAL PURPOSES ONLY.

which has the address of   215 OLD NEW YORK ROAD
                                                   [Street]

**PORT REPUBLIC CITY**         ,  **NEW JERSEY**              08241         ("Property Address");
       [City]                           [State]              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security
Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument").
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to
any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the
debt evidenced by the Second Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents,
flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of
payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the
Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may
require Borrower to pay specified property charges directly to the party owed payment even though Lender pays
other property charges as provided in this Paragraph.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property,
whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including
fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender.
Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected,
against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by
Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if
not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make
payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to
restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97                                    Page 2

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

13XA : 11/96                                    Page 3

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retaining a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

14XA : 11/96                                    Page 4

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

15XA : 11/96                                   Page 5

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

XD01 : 02/02

Page 6

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of      **5.3900 %** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **NOVEMBER, 2005**     , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **FIFTEEN AND 390/1000**        percent (    **15.39000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

XD02 : 08/05                  Page 7

*FIRST AMERICAN TITLE INSURANCE COMPANY*

### Schedule A

**File Number:** ▮▮▮▮▮▮▮

### LEGAL DESCRIPTION

**All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Port Republic, County of Atlantic State of New Jersey:**

NOTE: Being Lot(s) 32, Block 14, Tax Map of the City of Port Republic, County of Atlantic.

NOTE : Lot and Block shown for informational purposes only.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)         _____ (Seal)
KENNETH H WILSON                -Borrower                                        -Borrower

-------------------- [Space Below This Line For Acknowledgment] --------------------

State of New Jersey

County of Atlantic

I CERTIFY that on August 29, 2005

Kenneth H. Wilson

personally appeared before me and acknowledged under oath, to my satisfaction, that this person (or if more than one each persons):

a. is named in and personally signed the within instrument; and

b. signed, sealed and delivered the same as his/her/their act and deed.

Signature _____

Title _____

XD03 .01/05                                        Page 8

KATHLEEN A. YOUNG
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 28, 2009